## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GEORGE M. TOMLINSON, SHARON MADSEN, )
CAPITAL MATRIX MANAGEMENT, )
ASSOCIATION VERELST, and LUC )
VERELST, )
                                  )      No. 09 C 1543
        Plaintiffs, )
                                  )
   v. )
                                  )
GOLDMAN, SACHS & CO., and JOHN M. )
YOUNGDAHL,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed suit against defendants Goldman, Sachs & Company ("Goldman") and John M. Youngdahl ("Youngdahl"), an employee of Goldman during the relevant time period (collectively, "defendants"), alleging that they violated the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 *et seq*. (Count I). The complaint, premised on injury allegedly caused by defendants' October 31, 2001 trading of 30-year bonds and bond futures, was not filed until March 11, 2009. Goldman argues that dismissal is appropriate because the complaint was filed outside the prescribed two-year statute of limitations and, alternatively, that to the extent plaintiffs' claim is premised on defendants' trading of 30-year bonds alone, it should be dismissed. Youngdahl joins in Goldman's motion.

I decline to address defendants' second argument because I find the complaint was not timely filed. For the following

reasons, defendants' motion to dismiss is granted.

I.

The complaint alleges that a consultant hired by Goldman, Peter Davis ("Davis"), attended a confidential quarterly refunding conference at the Treasury Department ("Department") on October 31, 2001, from 9:00 a.m. until approximately 9:25 a.m. At the conference, a Department spokesperson informed attendees of a pending announcement of the Department's intention to suspend the issuance of the 30-year bond later that morning. The information provided at the conference was embargoed until 10:00 a.m. Despite the embargo, Davis called various clients, including Goldman through its employee Youngdahl, and told them about the Department's announcement. The announcement was accidently published early on the Department's website at 9:43 a.m., but by that time employees at Goldman, with an eight-minute head start, had already started trading 30-year bonds and bond futures in significant numbers. Such trading is alleged to have caused plaintiffs, who were not privy to the inside information, to incur substantial losses on positions in 30-year bond futures and options by November 1, 2001. The SEC began investigating Goldman and Davis in connection with Goldman's October 31, 2001 bond market trading shortly thereafter. The results of that investigation were

2

published on September 3, 2003.[1]

## II.

A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In resolving a motion under Rule 12(b)(6), I must accept all well-pleaded allegations in the complaint as true and consider the facts in the light most favorable to the plaintiff. *Americanos v. Carter*, 74 F.3d 138, 140 (7th Cir. 1996). Although a complaint need not anticipate or overcome a statute of limitations defense, dismissal may be appropriate if the plaintiff alleges facts sufficient to establish that defense. *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

## III.

A claim under the CEA must be "brought not later than two years after the date the cause of action arises." 7 U.S.C. § 25(c); *accord Stephan v. Goldinger*, 325 F.3d 874, 876 (7th Cir. 2003). "[I]t is the discovery of the injury, not the elements of a particular claim, that gets the clock ticking." *The Cancer Found., Inc. v. Cerberus Capital Mgmt., L.P.,* 559 F.3d 671, 674 (7th Cir. 2009); *see also United States v. Duke*, 229 F.3d 627, 630

---

[1] For some background on the financial instruments and markets at issue, and a more detailed timeline of defendants' activities on October 31, 2001, *see Premium Plus Partners, LP v. Davis*, No. 04 C 1851, 2005 WL 711591, at *1-5 (N.D. Ill. March 28, 2005)("*Premium Partners*").

(7th Cir. 2000) ("The discovery rule does not permit the victim of an alleged wrong to postpone the running of the statute of limitations by willfully closing his eyes...to a known probability that he has been injured.")

The parties agree that the *Premium Partners* litigation, a related class action, tolled the limitations period between March 11, 2004 (the *Premium Partners* filing date), and August 22, 2008 (denial of class certification). The parties disagree as to whether news releases and articles published between October 31, 2001, and April 23, 2002,[2] gave plaintiffs inquiry notice of their CEA claim and whether defendants' denials of liability support tolling of the limitations period.

Defendants argue that if the limitations period did not begin running when plaintiffs' injury was complete (on November 1, 2001), the discovery rule only delayed its start until no later than April 23, 2002. By April 2002, the following facts were publicly available from multiple news sources: 1) Goldman was one of Davis' clients; 2) Goldman received the embargoed information from Davis while it was still confidential; 3) Goldman traded 30-year bonds and bond futures during the eight-minute period immediately before

---

[2] Defendants have attached copies of such articles to their motion, of which I take judicial notice. *See 520 South Mich. Ave. Assocs., Ltd. V. Shannon*, 549 F.3d 1119, n.14 (7th Cir. 2008)(explaining that a court may take judicial notice of documents in the public record and may consider judicially noticed documents without converting a motion to dismiss to one for summary judgment). Plaintiffs do not object.

4

the Department's announcement became public; 4) Goldman made a profit on such trading; 5) 30-year bond prices rose before the Department's announcement became public and continued to rise thereafter; 6) the 30-year bond market experienced the largest price rally in some fourteen years on October 31, 2001; 7) the SEC began investigating these October 31, 2001, events in November 2001; 8) Goldman and Davis were specifically named in the SEC investigation; and 9) as a result of the SEC investigation, Goldman and Davis were issued Wells notices - a precursor to formal charges.

The news releases and articles relaying these facts included statements issued by Goldman publicly admitting that it received the embargoed information regarding 30-year bonds from Davis, traded on it, and made a profit, although liability for these actions was repeatedly denied. In short, Goldman's position was that Davis never mentioned the bond information was confidential, so it improperly traded on that information by mistake. Davis' conflicting position, that he told all of his clients about the embargo, was also reported.

Plaintiffs contend that the cited news reports are vague and did not provide sufficient notice of their injuries because the facts reported did not address every element of their CEA claim.[3]

---

[3] The parties appear to agree that the elements of a violation for market manipulation are (1) the defendant possessed an ability to influence market prices; (2) an artificial price

5

But "[a] plaintiff does not need to know that his injury is actionable to trigger the statute of limitations – the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *See Cancer Found.,* 559 F.3d at 674. More specifically, plaintiffs claim the news reports did not suggest that Goldman's alleged plan to manipulate the markets was "pre-meditated" and did not include the volume, type, or timing of Goldman's trades. This argument is not persuasive. First, although the specific volume of trading was not included, the type and timing of Goldman's trades were. 30-year bond market irregularities were also reported in detail, including information that price changes in the bond market started before the Department's announcement became public, when Goldman "stepped up" its trading. (*See e.g.*, Docket #32-5, pp. 33-34, 38.) Although other market forces could have been at play, the reported facts suggest that Goldman's early trading activity had an impact on the market.

Moreover, contrary to plaintiffs' contentions, intent can be inferred from the circumstances – they were not required to wait for formal charges, an indictment, or an admission of intentional conduct. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 482, 484 (N.D. Ill 2007); *see also Rooney Pace, Inc. v. Reid,* 605

---

existed; (3) the defendant caused the artificial prices; and (4) the defendant specifically intended to cause the artificial price. 7 U.S.C. § 13(a).

F. Supp. 158, 162 (D.C.N.Y. 1985)(noting that evidence of fraudulent intent can await discovery in market manipulation cases as such proof is likely to be in defendants' exclusive control). News reports stated that it was well known in the bond market that information provided at the Department conference on October 31, 2001, was embargoed until 10 a.m. Davis and Goldman were sophisticated players in the financial industry and Goldman had an obvious incentive to trade on the embargoed information. Moreover, after five months of investigating Goldman and Davis, the SEC issued Wells notices - they did not drop the investigation or absolve defendants of any wrongdoing. All considered, the information available to plaintiffs was more than sufficient to suggest intent and place plaintiffs on inquiry notice of their claim. The cases plaintiffs' cite as support for extending the discovery period through September 2003 are factually distinguishable in that information available to the public in those cases either 1) did not assert that the defendant committed any wrongful acts, or 2) reported wrongful acts that were unrelated to the plaintiffs' claims. *See e.g., In re Copper Antitrust Litig.*, 436 F.3d 782, 789-90 (7th Cir. 2006)(finding material fact dispute regarding inquiry notice where available public information did not suggest defendant financial institution's activities went beyond its normal role and CFTC did not name defendant as a subject of its reported investigation); *Levitan v. McCoy*, No. 00 C 5096,

2001 WL 1117279, at *6 (N.D. Ill. Sept. 21, 2001)(public reporting of unrelated consumer class actions involving payment processing problems did not put plaintiff on inquiry notice of its injuries relating to materially overstated and/or improperly prepared financial statements); *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 530-33 (N.D. Ill. 2007)(announcement regarding reduction of earnings forecast not tied to any misconduct known in the marketplace was insufficient to support inquiry notice of claim).

For the stated reasons, I find plaintiffs' CEA claim accrued no later than April 23, 2002. The limitations period ran until March 10, 2004, when the *Premium Partners* class action was filed, tolling the limitations period until class certification was denied on August 22, 2008. Accordingly, the two-year limitations period ended in October 2008 - more than seven years after the alleged injuries and five months before the present complaint was filed.

IV.

Plaintiffs also allege fraudulent concealment, arguing that the limitations period should be tolled because Goldman publicly denied liability and Youngdahl denied knowledge that the information was embargoed, claimed that he never communicated with Davis or agreed to receive embargoed information from him, and that he had never seen emails exchanged with Davis concerning the receipt of embargoed information. (*See* Compl. ¶¶ 56-66.) These statements are mere denials of liability that do not support

8

tolling of the limitations period. *See Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002)(defendant's false statements that other people were responsible for alleged misconduct and that defendant opposed alleged misconduct were denials of liability not sufficient to support tolling); *see also In re Copper Antitrust*, 436 F.3d at 791-92 (allegations sufficient to show material facts in dispute on issue of fraudulent concealment included bribery, destruction of evidence, and affirmative instructions to co-conspirators not to divulge the conspiracy - "denying liability or failure to cooperate is not enough to invoke the doctrine of fraudulent concealment").

Moreover, fraudulent concealment is not applicable here because defendants' denials of liability are not what prevented plaintiffs from suing on time. *See In re Copper Antitrust*, 436 F.3d at 791 (stating that fraudulent concealment denotes efforts by the defendant that prevent the plaintiff from suing in time); *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 507 (7th Cir. 1999)(finding equity did not toll limitations period where plaintiff was aware of claim months before limitations period ended; "failure to file the claim on time must have been done in reliance on the defendant's fraudulent conduct"). Plaintiffs admit they knew all the facts underlying their claim by September 2003 – seven months before the end of the limitations period. But then *Premium Partners* was filed, which further tolled the limitations

9

period through early October 2008.  All considered, plaintiffs, by their own account, had more than five years after defendants' denials of liability in which to file their complaint.  Equity does not demand more.

V.

For the foregoing reasons, I grant defendants' motion.  This case is dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Date: December 16, 2009